May it please the Court, my name is Theresa Walbaum. I'm here on behalf of the Department of Justice. As an initial matter... Can you try and speak up a little bit? Certainly. Thanks. As an initial matter, this Court has jurisdiction over the government's interlocutory appeal. The government filed a timely certification as required by 18 U.S.C. Don't we have an en bas going on this, Grace, I think it is? Your Honor, I'm not aware of that, if there is. The answer is yes. Yes. I guess my next question... Sorry. But in Grace... We ought to just wait for Grace to answer the question of whether a B.A.R.E. certification is enough. Who's going to answer that? I was going to ask you, but it sounds like we're probably more familiar with it. Well, in this case, Your Honor, there's far more than a B.A.R.E. certification. In this case, there is a certification that the evidence suppressed, the wiretap evidence and everything that stems from that is, in fact, substantial proof of a material fact. And in this case, it's a critical part of the case. It's not, as in Grace, a question about additional witnesses or in Adrian, a question about prior convictions. It is the heart of the evidence of this case. And there is... Is there a document that says that? The certification doesn't say it is the heart of the case, but it says it explains why this is the wiretap evidence. And evidence derived from the wiretap is critical and necessary for the government's case. So in this case, unlike Grace... Your position, then, is that the language that, let's see, contains substantial proof of facts which are material in this proceeding, the Court's order will prevent the United States from introducing evidence of communications that occurred among the defendants, in addition to subsequent evidence obtained as a result of said communications will have an adverse effect on the outcome of the trial. Your position is that is substantiation for the certification under 3731. Correct, Your Honor. Especially in a case such as this, which is a drug trafficking conspiracy, and the evidence is wired – is a wiretap of the defendants discussing the conspiracy. I was asking, actually, what I had in my head was an affidavit where somebody for the government says, we just can't prove our case without this wiretap evidence. We think we'll be able to with the wiretap evidence, and that's why the interlocutory appeal is critical. We don't have something like that.  We have the certification that's in the record, and it's attached as an addendum to the government's brief. I mean, as a practical matter, if we uphold Judge Whaley's order, this prosecution is over, is it not? It is over as to most of the defendants, Your Honor. That is correct. All kinds of Kastigar problems and fruit of the poisonous tree. Exactly, Your Honor. The central issue to this case is whether or not Judge Whaley, as the reviewing court, committed reversible error when he essentially reviewed the Judge Succo's decision issuing – authorizing the wiretap affidavit and finding it necessary. Whether he – whether that was – I'm sorry, let me start again. Whether there's – whether he committed reversible error by essentially reviewing the issuing judge's determination of necessity, essentially de novo. And the case law in this circuit is clear that the district court authorizing a wiretap affidavit is entitled to wide discretion, and that a determination, a finding of necessity, should not be reversed absent a finding of an abuse of discretion. There's no finding of abuse of discretion in this case. Rather, what Judge Whaley did was he focused – he attempted to circumvent the abuse of discretion standard by focusing on the full and complete statement requirement. Now, is that different or the same as a necessity? Well, Your Honor, it's an element of necessity that there be a full and complete statement as to investigative techniques. It's separate in this circuit in terms of how the standard of review that is applied. But it is simply – That's really what I'm getting at. And what's the standard of review on that full and complete statement? A full and complete statement is de novo. It's de novo review. However – If that's so, then isn't that contradictory statement that Judge Whaley was wrong when he, you know, gave that de novo review? What Judge Whaley did was he revisited the necessity determination. Well, he was really talking about the full and complete statement, wasn't he? Your Honor, the full and complete statement and the de novo standard of review in this circuit has consistently been applied when there is a material omission or a material misrepresentation. Here, there's no claim that the government misrepresented anything. There's no claim – Well, he's talking about omissions, though. But the omission – Or incompleteness, let me put it this way. But they have – that has to be two separate things, Your Honor. The omission here is not that there was something omitted from the wiretap affidavit that had the issuing judge known it, might have affected his decision. It is simply that Judge Whaley would have liked additional information about investigative techniques had he been the issuing judge. But that's not the standard. Clearly, he wouldn't have issued the wiretap. But the question I have, which I think dovetails with Judge Tshima's concern, is can he do what he did without conducting a full-blown evidentiary hearing at which he actually has the affiant agent on the stand testifying to the circumstances surrounding the investigation before he – does he have to make a factual determination that there have been material omissions before he can then abandon the abuse of discretion standard and conduct a full-blown overview of the necessity determination? I think he does, Your Honor. For example, in Blackman and Ippolito, the cases that Judge Whaley relied upon, this – the analysis conducted there is if the affidavit is inaccurate, you then take out the inaccuracy or you put in whatever was omitted, and then you reevaluate. Here, if you do that, you realize that there was nothing to reevaluate. It was simply Judge Whaley's desire to have more information had he been the issuing judge. And since there is no – there is no misrepresentation and there is no omission in the sense of Blackman and Ippolito, it was – No, but when you say it was his desire to have more information, but doesn't that – again, let me ask the question. Doesn't that go to the full and complete statement requirement? Wasn't that his concern? Your Honor, the – the guiding principle in construing these cases is common sense. If – I hope so. In – in looking at – if you were to accept that you could construe an omission as something that you would like additional information about, that essentially eviscerates the abuse of discretion standard, because as a practical matter, as a common sense proposition, any judge could essentially second-guess an issuing judge. So what you're saying is, use these differences in the standard of review this way. Tell me if I understand this right. The full and complete statement means the cops didn't lie to the judge and they didn't hide something from the judge. They laid it all out for the judge. If they laid it all out for the judge and he decided there was necessity for the wiretap, review that under the abuse of discretion standard. They no vote for whether the DEA lied to the judge or held something back from him so that he couldn't make a fair judgment about necessity. But if they laid it out fairly to him, then deferentially review the necessity determination that resulted in the wiretap. Have I got this right? Correct, Your Honor. That's correct, Your Honor. And that is consistent. And that's logical. It's consistent with a host of cases. I can see the logic. That's why I was trying – understanding it that way. A little bit of Franks and a little bit of not Monday morning quarterbacking a search warrant, kind of like Leon. A little bit of each so you never really get to Leon in most cases. Exactly, Your Honor. And that is the only way to construe Blackman and Ippolito and be consistent with the rest of the cases. And the case law supports the way I laid it out. Yes. In fact, in Canales-Gomez, I believe this Court restricted Blackman to cases in which there was a material misrepresentation or, in fact, plagued with material misrepresentations. And that dichotomy preserves the meaning of the statute and reconciles the various cases in this circuit. And in this case, again, there's no finding, there's no claim from the district court that there is a material misrepresentation or that there's a misrepresentation. Now let me ask you about my next question. Yes, sir. And I have the same question for your adversary, so I'll be interested in your answer too. In a dope case, it seems like necessity is going to be so easy that it kind of doesn't mean anything because it's a crime that's accomplished by talking. The way you sell something, the way you buy something is by talking. I offer you this commodity, legal or illegal, for so much per ounce. I agree to purchase this commodity from you, legal or illegal, whichever it is, for so much per ounce. We have a deal. I will deliver it to you at such and such a time and place. That's agreeable to me. That's the crime if the substance being sold is illegal, although it's also exactly how legal commercial transactions are made. Since it's nothing but words, it seems like once you have a dope case and you identify a dope dealer, you can get a wiretap on his phone. Not necessarily, Your Honor. I don't think there's a risk of that. Why not? Well, there are other ways. How do I know who he's buying from and who he's selling to in any dope case unless I can listen to his words? Well, in this case, physical surveillance indicated that he had him. I don't know physical surveillance. I mean, a dope dealer, besides his work, he may have people come over and watch the ballgame with him. He may have a girlfriend. He may have a wife and a girlfriend. Who knows? A lot of people, besides their work life, they have communications that are unrelated to their work life. Well, obviously, Your Honor, a wiretap in a drug trafficking conspiracy is going to be probably the best evidence in a number of cases. In this case, there was extensive use. That didn't really deal with my concern. My concern is if you win, does it mean that any dope dealer's phone can be tapped? No, Your Honor. Why not? The government still has to prove that investigative techniques have been tried and have failed. You're talking generally. But I can give you examples. But I can watch the guy's house for a month and see who comes and goes. How do I know if they're dealing dope? I can watch the guy go to the movie theater or go to the grocery store. How do I know? Well, I once had a case as district judge. It was a ladies' conspiracy. They're smart. They go to the grocery, and one puts the dope in the other one's cart, and the other one puts the money in the seller's cart. And then they walk out of the grocery, 3 in the afternoon, a couple of innocent-looking housewives. I don't know, with most surveillance, how you can actually do anything unless you hear them talk. Well, you can hear them talk using confidential informants, undercover agents, consensually recorded calls, all of which were used in this investigation. You can then couple that with surveillance, tracking them when they have made particular calls. You can have PIN registers and track calls, and you can correlate. So there are other people I talk to all the time, but who knows what I'm talking to them about unless they can listen to my call? Well, again, if you have a confidential informant and you have consensually recorded calls, you would be getting their words in that respect. My secretary knows who I talk to, but she doesn't know what I say to them. That's true, Your Honor. And there are certainly limitations, but a number of cases are made using informants, undercover agents, consensually recorded calls, undercover buys, all of which were used in this case. The problem was after several years, it was clear that they'd reached a point where they were not going to find the sources of supply. They were not going to be able to find the bigger scope of the conspiracy. But under the case law, that is sufficient. There must be good faith efforts to try investigative techniques. You mean sufficient to meet the necessity requirement? Sufficient to meet the necessity requirement. I don't see how they're going to rule out the necessity. I don't see how they're going to be any more than just kind of a checklist of futile gestures we make before we get the wiretap. Well, there are nine circuit cases that have held that the necessity requirement was not met, right? Yes, there have been. But there's also – I would just reiterate that there are ways, investigative techniques that do work in drug trafficking cases, which work. If you can do a controlled buy with an informant who's wired for sound, strip-searched before, strip-searched after, great. But – Well, I would assume – I never did the study, but if somebody did some kind of a study, I bet most drug cases are made without a wiretap. I think a number of cases are. And I think certainly you can observe somebody transacting in drugs in Street Corner and people are arrested all the time based on suspicious behavior. You just get the little guys with these. Well, you may. You may get – if you have a big enough investigation with surveillance that you can put people together, you can build – you can build bigger cases. But it's also – that's true of most conspiracies, Your Honor, that talking is an integral  In several cases in the circuit, such as McGuire and Brown, however, the court has held that the government's actually entitled to more leeway in a – in a conspiracy case because of the severity of the crime. And in this case, I think it's important to realize that Judge Whaley's interpretation actually imposes a greater burden on the government in a – in a conspiracy case because of his related holding that you must explore all investigative techniques as to potential interceptees that the government believes are going to be calling into the wiretapped phone and discussing the criminal activity. That's a – that, again, looking at this through common sense, is an impractical approach that would require the government to do precisely what this Court has said it need not do, pursue to the bitter end every possible lead as to every target and every telephone. That's not required. So you would cite to those Ninth Circuit cases where we have focused upon the probable cause showing, A, that the target is engaged in illegal activities, and probable cause to show that this particular instrumentality of interstate commerce is being used to further those activities. And we have to do that for every wiretap order that we get on every instrumentality, even if it's in the same investigation. For every – for every wiretap, a separate wiretap requires the necessity determination, not every interceptee. And your – your argument here is that Judge Whaley broadened it by saying before you can get the first wiretap on the first phone, you have to expand the scope of the necessity showing to include every known co-conspirator that you've been able to identify to date who might possibly be trapped or overheard, I should say, on this particular wiretap. Correct, Your Honor. And the – this Court specifically rejected that approach in Canero when a defendant argued there was no necessity. There was not a – because the government had not used a PIN register and had not conducted physical surveillance on one of his co-conspirators, and who ultimately turned out to be a source of supply. And – and in Canero, this Court said that that's not – that's not required in the necessity standard. It's not required that it be the last resort in an investigation. Your Honor, do I understand this right, that Judge Whaley thinks that once you know who a dope dealer has contacts with, if you want to tap his phone, you also need to show that you've exhausted the alternatives on the other people that he talks to? And you think the law is that once you know that a dope dealer is conspiring with others to buy and sell dope, that's enough to tap his phone? No, Your Honor. I'm – I'm – Judge Whaley is – that is his holding, that you must exhaust, which is, of course, not the standard, but that you must explore investigative techniques as to everyone listed in the – in the… When you put in a lot of parentheticals, it makes it hard for me to follow your sentence. I'm sorry. The – Judge Whaley held that in a conspiracy case, the government must use investigative techniques as to every co-conspirator listed in the affidavit, even though their phones are not being tapped. In other words, make a showing of necessity for all those persons, right? As to all of those persons, correct. But that's even the – even people whose phone isn't tapped. Correct. Just because you think they'll be on the phone to the guy whose phone is tapped. Because they're likely to be intercepted. Because they are calling into the wiretapped phone and they will be intercepted as a result of that. And they are – have probable cause to believe that they are involved in the criminal – in the criminal activity. That is far broader than any case in this circuit has ever held. And it is – we would submit – it would eviscerate the statutory scheme. It would… Is it enough just to show necessity for the person whose phone is tapped? Yes, Your Honor. It's not necessary to show necessity for the persons that you know are likely to be calling them. It is not a per se rule that the government must show necessity as to the interceptees who are not being wiretapped, Your Honor. It may be… A lot more words. Did you mean the same thing that I meant? Yes. I'm sorry, Your Honor. There may be cases where an issuing judge requires that there be investigation. Anybody who checked my phone would probably discover that whenever I'm out of town, I call my wife. If they had good reason to tap my phone, could they tap my phone without showing necessity for her or would they also have to show necessity for her? They have to show necessity for you, Your Honor. Do they have to also show necessity for her? No. Even though they know I'm likely to be chatting with her every day? Yes. No, but there's a… Excuse me, Your Honor? But there's a minimization requirement, right? Of course. There are, as this Court has also held in a number of cases… And we're sort of getting far afield here. No, no. But that is actually an important point, that there are, as this Court has noted, a number of fail-safes in the statute to prevent an overly intrusive scheme and that there are a number of ways that would come into play here to avert the type of worst-case scenarios that apparently Judge Whaley believed would result. But in sum, to summarize, the cases in this Court, including Canero, McGuire, Brone, Bennett, all of them contradict Judge Whaley's position for a number of reasons. His position cannot be reconciled with those cases.  Thank you. May it please the Court, Diane Hare with the Federal Defenders of Eastern Washington in Idaho. I represent Mr. Eduardo Hernandez-Hernandez, who is one of the defendant appellees. I speak on behalf of the collective group of Chuprez et al., also present in the courtroom, and at counsel table is Mr. Greg Smith. Mr. Scott, present in the courtroom are Rick Hernandez and Todd Harms, who represent other named defendants. I will be answering the Court's questions and arguing. Do you have all the time? I've got the time. It looked to me as though really what it did boil down to is, does the necessity showing have to be made just for the person whose phone is tapped, or does the necessity showing have to be made for other people who are likely to be calling him? And the way I read the cases in the statute, it just has to be shown for the person whose phone is tapped. What am I missing here? Well, what ‑‑ And Judge Whaley, I think, thinks it has to be shown for the other people who are likely to be calling him. Right. Judge Whaley actually was on the Canero case as a trial attorney, and I think he's pretty familiar with that ruling. He's very familiar with wiretap cases. I don't understand how the government or the Court asks the question about we only have to show necessity for the wiretap recipient, the person whose phone is being tapped. The analysis that Judge Whaley performed was simply to say it was a ‑‑ he completely applied existing Ninth Circuit precedent under Ippolito. But he did so without conducting any kind of an evidentiary hearing.  Yes, Your Honor. But what he did was to put himself into the role of an appellate judge reviewing the four corners of the Title III application and ignoring his obligation as the trial judge handling the suppression motion to actually hear testimony from the agents to determine what investigative techniques they employed as to all the people they were concerned about. Then he made, with his little chart, certain conclusions that may or may not be supported by the facts. We don't know as to what the investigation was with regard to others in the drug trafficking organization without listening to any of the agents tell him what they'd done. And I have a real concern procedurally with what he did here. I understand. I think I understand. Let me put it to you even more simply. It looked to me like he forgot that Judge Suko was no longer a magistrate judge and he was simply looking at the affidavit as if he was a district judge on a motion to suppress trying to determine whether or not there was a fair probability that evidence relating to the drug conspiracy would be found on the target's phone. I don't think that's what Judge Whaley did, Your Honor, and here's why. What he did was he applied a de novo review to the full and complete statement which the district court judge does when reviewing it. How can he do that before he hears any testimony as to what was actually done? How can he conclude that it's not a full and complete statement if he hasn't asked the agents, what else did you do? I think the contrary to that under, for example, Gonzales, Inc., I think is a good source for the court to look at for an answer to this question. You don't get a Franks hearing every time as a defendant you ask the court to suppress the wiretap. The only way you get a Franks hearing, and we've requested a Franks hearing, but we haven't gotten there yet, procedurally where this case stopped was when the government immediately upon the judge issuing this ruling filed an interlocutory appeal and moved to stay all further proceedings. That's what the government did. But it looks to me like Judge Whaley jumped the gun here. He could very well have issued the order that he wanted to issue. Had he actually conducted an evidentiary hearing in order to determine that there were Franks problems, there were material omissions, there were misrepresentations to Judge Succo when the application was filed. But he didn't do that. What he did do, Your Honor, is he looked at the application and he asked the government, where's the evidence in this application as part of the full and complete statement, where's the evidence of the investigation that you did into the people that you've identified as suppliers of Mr. Chiprez? Wouldn't I, as the issuing judge, want to know why traditional investigative techniques have been tried and failed? And the government said the problem I'm having is he's confusing his role. He's the suppressing court, not the issuing court. And there's an interesting... The law says we've got to give great deference to the issuing judge, and if all he's doing is looking at the same declaration that Judge Succo was looking at, I don't see how he's added anything to the equation here other than second-guessing the determination by the issuing judge who was obviously satisfied with the showing of necessity. He's done what Congress required him to do. One C says in order for the government to obtain a wiretap, they have to go to an issuing judge. And when they go to the issuing judge, they have to provide a full and complete statement. Judge Tolman says he's not the issuing judge. That's right. So then what happens is they go to the issuing judge and they get their wiretap, even though they haven't told that judge anything about... All right. The issue comes down to this, I think, about to be part of the answer to Judge Tolman. I think this is the issue now, which Ms. Walbaum alluded to, that when he made his finding that, well, it doesn't meet the necessity requirement because it doesn't meet the full and complete test, he's based that upon his idea that, well, they have to make the showing with respect to all these persons who are not targets, who are likely to be overheard, like the co-conspirators. I think that is an overbroad... Is that what he said? No, I think it's an overbroad statement of Judge Whaley's ruling. What Judge Whaley's ruling said was you have to provide the specifics for every case. That's the government's burden in every case. You have to provide the specifics. On this case. On this case, he said, well, there are all these other people that are going to be heard on these taps, the co-conspirators. We all know that. I mean, that's a known fact, so you have to show necessity to all of them. You have to show me why it's necessary to tap Mr. Chaprez's telephone by telling me why your traditional investigative techniques won't work or haven't worked. No, but it wasn't limited to Chaprez, Silva-Chaprez. Yeah. I agree with the Court that it wasn't limited. What he said as the issuing judge is that in order to decide whether or not to tap Mr. Chaprez's telephone, the judge has to know that, in fact, you've tried techniques. So, for example, take the government's argument... No, but what's the technique? Techniques with respect to these other persons. I mean, did you search in or whatever it is, all the co-defenders crashing, that kind of stuff, right? Let me provide a hypothetical. No, no, no, before you do that, but let me ask you this now, though. Can you cite me a case that holds that that kind of broad inquiry with respect to persons who are not targets is required by the issuing magistrate in approving the tap? What's your best case on that? I believe that when you look at Gonzales, Inc., for example, that is a case where the district court decided that a Franks hearing was necessary and Judge Tallman was concerned that we didn't have a Franks hearing here. In Gonzales, Inc., the district court decided that there were material omissions and misstatements, held a Franks hearing, ultimately decided that the facts weren't, in fact, meant to deceive the court, but still found that the application itself lacked necessity because the application itself, on its face, has to show that reviewing judge, not just the issuing judge, your role as the reviewing judge is to determine if on the face of the application you've met the full and complete statement requirement of 1c. And before you can take that evidence to trial, we get to ask the court to look at it under 10c. Let me ask the question a different way. Would you concede that there was probable cause to believe that just as to Mr. Silva, Shipra alone, that he was involved in drug trafficking? Yes. And would you also concede that there was probable cause to believe that this particular phone, the cell phone, there was probable cause to believe that it was being used in furtherance of the drug transactions? That it had been, yes. Okay. So if he erred in expanding the scope of the necessity showing beyond the target, then isn't that the end of the inquiry as far as we are concerned? He committed an error as a matter of law because that's not supported by any case that I've read, and therefore the premise on which he suppressed all of this evidence is simply wrong. It's a matter of law. I think that his interpretation of the existing Ninth Circuit law is to show necessity, you've always got to tell me everything. So when the government stood up at the hearing and said, I don't have to tell you that, there's no case that says that I have to show you that. Well, everything as to who. I mean, the question I was trying to get to was I think you would have to concede, a common sense reading of this application, that the statutory standard is met with regard to the target and this particular phone. As to probable cause. Yeah. As to probable cause, A, that the target is involved in drug dealing, and B, that this phone was used and is likely to be used to further the drug. And now let's talk about necessity. Necessity as to this individual and this phone, and I think you would still have to conclude, if that's the limited scope of your inquiry, that this declaration is sufficient to meet that standard. If, however, you agree with that. I don't. I respectfully disagree, and here's why. Let me give you the hypothetical. Let's say that, in fact, as a result, because you have an undercover agent, as you do in this investigation, you arrest a source of supply, and he folds like a cheap tent, and he tells you everything you need to know about the CHPREZ organization and who the sources of supply are. But you, as an investigator, are interested in obtaining corroborating evidence, and you go in front of that magistrate and you, or excuse me, the district court judge issuing judge, and you don't tell him about the traditional investigative techniques that you successfully employed. I don't think it is right to say. That's not the hypo. All three of us are asking you in different words. I also think it's a different case. All three of you are asking you in different words the same question, and that is, as to whom? The way I interpret your answer, what you're, if we apply it to a case like this one, once they do a pen, I think it's called a pen register where they find out, they've got a guy cold. They've gone through the investigation, and they know he's a conspirator in the dope business. They have enough to get a tap on his phone if that's all it takes. I think what your argument implies is, if they do a pen register check and it shows what numbers he regularly calls or has called more than once, or people that have called him more than once, you now need, in your theory of the case, before you can get a wire tap on his phone, you need to go through the attempted use of informants, surveillance, all the usual steps on everybody else who the pen register identifies before you can tap your known dope conspirator's phone. I think that's what the government tries to say. I don't think, that's not what I say or what I believe Judge Whaley said. I think Judge Whaley said all, what you have to. I don't care what Judge Whaley said. Him, we review de novo. Correct. So I don't really care what he said. I'm more interested in what Judge Succo said because of the deference that has to be given on a necessity determination. I think Judge Whaley gets the same de novo. We don't defer to Judge Whaley, so he's not authority we have to follow. Right. So I look at our cases and I look at the statute, and the statute says it refers in 3A to an individual, apparently the individual who's to be tapped, and then 3D refers to the facilities from which the communications are to be intercepted, which sounds like Chipa Cifres, or I can't remember, I don't know how to pronounce his name, his phone. I can't see anything in the statute of the authorities that says once you do a pen register check and you find out who calls this phone, then you have to do surveillance and attempted use of confidential informants and all this other stuff on the people that he calls or who call him. I don't believe that the Ninth Circuit law requires that, nor do I think that this holding or ruling requires that. What it requires is for the government to provide a full and complete statement of what traditional investigative techniques have been trying to do. I can't see where the government lied to Judge Succo or where it hid anything from Judge Succo. You're just saying they should have done more investigation. No, I'm not saying they should have done more. It's the same question over again, and we've been asking this time and again, full and complete investigation as to whom you're containing that has to be made with persons other than the target, right? Including Mr. Hernandez-Hernandez, your client. That's right, and I think that when you're talking about an investigation, the full and complete statement has to be about your investigation. Did they hide something from Judge Succo about what investigation they'd done of Hernandez-Hernandez? In front of Judge Succo, I don't think we have that record yet because we haven't had a Franks hearing where Agent Diaz has been put on the stand and admitted to what he said or didn't say. Okay, well, where are you putting that procedural problem aside, which I think is a significant problem, at least to my mind, how is it that you find in the provision of Title 1825.18.3 a requirement that that same showing be made with regard to Mr. Hernandez-Hernandez when it's not his phone that's being tapped and where he is not the ‑‑ there's not probable cause at that point, where the probable cause is directed towards Mr. Silva-Shipra as the owner of the phone? I don't believe that the government needs probable cause with respect to Mr. Hernandez-Hernandez. What they need is to show why it's necessary to tap Mr. Chiprez's phone. And in order to do that, they need to tell the issuing judge, Judge Succo, what they've done and why it won't work. But the declaration goes on for pages talking about all of the things that we've done. We've arrested these underlings. We've obtained records of his bank account. I mean, it seems to me that there is a necessity showing with regard to him, but I don't understand why it extends to Mr. Hernandez-Hernandez when it's not his phone that is the subject of the Title III wire. The bank records provide a good example. So they had bank records through traditional investigative techniques, but they don't say in the affidavit why it is that they can't find out what their identified source or target of their investigation is what's happening with the funds. Well, what did they do that doesn't represent a threat? Did they issue a subpoena? Did they get the bank records and follow the money? They do describe the concern that I think most prosecutors have at this stage of the investigation, that if you get too far ahead of the headlights with grand jury subpoenas and other process, that there is a risk, search warrants, that you will tip off the subjects of the investigation that you are on to them, and that is referred to by the agent several times in the declaration, isn't it? It is. The risk is referred to. So that risk is part of the necessity showing, isn't it? I think the question becomes then why isn't Judge Kleinfeld's question correct? Why doesn't the government get a wiretap in every drug case? Once they've established the answer. Do we know the answer? Do we not? I mean, there are very practical resource limitations. These Title III wiretaps are very manpower intensive and they're very expensive, and the government just doesn't have the resources to do it in every drug case. What I mean to say is that I don't believe that the government, under the balancing act that's set out by Congress, that the government is entitled to a wiretap in every drug conspiracy case. They're entitled to it if they can establish the statutory elements in 2518-3, are they not? Correct. And what the issuing judge is going to be interested in and what the government conceded at oral argument is, no, we didn't tell you everything. If we had told you everything, it would have been a book. Well, the agent says in his declaration, look, I am providing probable cause as to Mr. Silva, Shipra's, and his telephone. I'm not including every single fact of the entire investigation in this declaration. And I don't read 2518-C or 2518 as requiring that the government has to write a treatise at that point in the investigation on every little thing that it's done for the last several years that they've been investigating this drug trafficking. Nor do I, but I think that under Ippolito that what the issuing judge needs to know is whether or not he's either advertently, deliberately, or inadvertently being misled, as to the necessity for the wiretap, by the government's choice to argue for a lowering of the bar of the standard of necessity and get... Ippolito has nothing to do with your argument about, you know, this requirement extending to co-conspirators. Ippolito stands for the proposition that you don't have to get to the issue or inquiry of whether or not the omission was deliberate. They found that it was material because it would lead the issuing judge, the issuing judge could decide on the face of the omission not to issue the wiretap. I'm having trouble seeing what the social harm to which the statute is directed is here as to Hernandez-Hernandez. The social harm of doing a wiretap on Chyprez's phone is very serious. The government doesn't just get to listen to him in his drug business. It gets to listen to him talking to his wife or his girlfriend or his physician or his child who's in college, maybe, all kinds of people where there are very serious privacy concerns. But for Hernandez-Hernandez, the government's not going to hear Hernandez-Hernandez talking to his wife or his girlfriend or his doctor or his son in college. All they're going to hear is him talking to Chyprez-Chyprez, for whom there's already a great case that he's a drug conspirator. Hernandez-Hernandez just doesn't have the same kind of privacy interest. I can't see where the words of the statute entitle him to the kind of protection you say, and I don't see where the cases do. I think that the whole purpose behind the congressional intent in Berger was the understanding that when you're issuing a wiretap, you're not just tapping the phone of the person that you put the wiretap on. You're listening to the phone conversations of every person who calls them, and that includes Eduardo Hernandez-Hernandez. This is why Congress put the minimization procedure in the statute, isn't it? And also why Congress required a full and complete statement of why you should actually get to tap that phone first, and that's what Judge Whaley said he didn't provide. That doesn't protect Mr. Hernandez-Hernandez. Mr. Hernandez-Hernandez is protected by the minimization requirement, isn't he? I think he's also protected if you don't get the wiretap when you don't show necessity because he's the... We don't know whether Mr. Hernandez-Hernandez is going to be overheard on that particular phone. It's not his phone. Certainly it's not his phone, but if the issuing judge would have decided it wasn't necessary, they never would have heard Mr. Hernandez-Hernandez. He wouldn't have been sitting in jail for the past year. The government concedes that's the only evidence they have against him. Congress surely understood when it enacted this law as part of the Safe Streets Act of 1968 and they were thinking about the mafia, that you were going to hopefully hear voices on the mafia's telephone that they'd never heard before in the investigation. That's why you make the showing because you hope to work your way up the chain. And the problem isn't that you're going to hear voices that you never heard before. That is obviously the reason why they seek the wiretap. The problem is whether or not you met Congress's intent when you're the government, and if you're the issuing judge and it's his independent decision, not the agent's decision about whether or not the wiretap is necessary, but Judge Succo's independent decision, is it necessary? And what I submit to the court is if you adopt the government's argument, then you're creating a situation where the magistrate, the issuing judge, isn't told things that might make him believe a wiretap isn't necessary in this case. Thank you, counsel. Your Honor, I'd like to make two brief points. First, Gonzales is distinguishable. Incidentally, you have already exhausted your time, but we'll give you two minutes. Thank you, Your Honor. I'll be very brief. Gonzales is distinguishable. It is like Blackmun in that it was two separate wiretaps,  especially as a cut and paste of the first wiretap, to justify a second wiretap. That's not the situation we have here. I would also, in terms of the breadth of Judge Whaley's order and his ruling, I would refer to this Court to page 6 of his order, which is a very broad statement that as to conspiracies that identify potential interceptees that the government must in all cases exhaust as to those interceptees. This is not a narrow ruling limited to this case. It is a very broad ruling. Unless this Court has any other questions. Nope. We would request that the order be reversed and remain. Thank you, counsel. United States v. Silva-Chiprez is submitted. We're adjourned for the day. All rise. This Court in this session stands adjourned. I got it. Thank you.
judges: Kleinfeld, Tashima, Tallman